**Jimmy Ray MITCHELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 49459.**

Court of Criminal Appeals of Texas.

June 25, 1975.

Rehearing Denied July 9, 1975.

Marvin Collins & Bill R. Magnussen, Fort Worth, for appellant.

Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for murder with malice wherein the jury assessed appellant's punishment at 100 years' confinement.

The evidence showed that appellant and five others, two other men and three women, were at the Vest Arco Station in Joshua at 6:45 p.m. on January 26, 1973. Appellant's companions left the station and waited in their car about 150 yards down the highway while appellant and one other companion robbed the station attendant. In the process, the evidence showed, appellant shot and killed the attendant and wounded a customer present at the time. The wounded customer obtained assistance at a nearby grocery store and appellant and his companions were apprehended a short time later near Burleson. They were later identified by the wounded customer and by another customer who had left the station immediately prior to the robbery.

In his first ground of error, appellant complains that the trial court erred in permitting State's witness Bill Waits to testify at the punishment hearing that appellant's reputation in his community for being a peaceful and law-abiding citizen was bad. Waits was Chief of Police of Joshua, where the offense occurred. Appellant contends that Waits was not qualified to testify as to appellant's reputation for two reasons:

(1) The officer's opinion as to appellant's bad reputation was based solely on the facts of the case for which he was being tried; and

(2) The officer had never discussed appellant's reputation with anyone.

In perfecting his ground of error, appellant took Chief Waits on voir dire and ascertained that the Chief's knowledge of appellant's reputation was based on the following. Waits had never heard of appellant before the date of the offense, nor did he know in what part of Fort Worth the appellant lived. His knowledge of appellant's reputation was based in part on the facts of the offense for which appellant was being tried and in part on a copy of appellant's "rap sheet" which Waits had received from the Fort Worth Police Department. Waits had never discussed appellant's reputation with anyone who knew appellant, either before or after the offense involved.

In Stephens v. State, 128 Tex.Cr.R. 311, 80 S.W.2d 980 (1935), this Court laid down the following rule with regard to testimony as to an appellant's bad reputation:

". . . the fact that he was indicted in the case on trial and that by reason of said charge alone his reputation at the time of his trial was bad, should not be provable when such reputation is based solely on the discussion of the alleged events for which he is on trial. . . . If subsequent to the return of an indictment against a defendant there arose a discussion of his reputation based on matters other than the present indictment, proof of such general reputation might not be inhibited . . . ." *Stephens,* supra, 80 S.W.2d 982.

The first requirement of *Stephens*—that bad reputation testimony not be based solely on the offense for which appellant is on trial—has been reiterated many times by this Court. Clark v. State, 500 S.W.2d 469 (Tex.Cr.App.1973); Nichols v. State, 494 S.W.2d 830 (Tex.Cr.App.1973); Twine v. State, 475 S.W.2d 774 (Tex.Cr.App.1972); Frison v. State, 473 S.W.2d 479 (Tex.Cr.App.1971); Martin v. State, 449 S.W.2d 257 (Tex.Cr.App.1970). Although appellant strenuously urges this ground, the record clearly indicates that Chief Waits' knowledge of appellant's bad reputation was based on his "rap sheet" as well as on the facts of the offense for which he was on trial.

The requirement that a reputation witness have *discussed* the bad reputation of the accused has received somewhat less attention from this Court. The requirement

is understandable, however, in light of the fact that reputation evidence is, of necessity, based upon hearsay. Sanchez v. State, 398 S.W.2d 117 (Tex.Cr.App.1966). Without the requirement of discussion with other members of an accused's community, a witness' testimony concerning the accused's reputation for being a peaceful and law-abiding citizen would be nothing more than an inadmissible opinion. Many cases of this Court have addressed themselves to the issue of *when* such a discussion of an accused's reputation should take place. Because of the *Stephens* requirement that reputation not be based on the facts of the instant offense, many appellants have urged that discussions of an accused's reputation had to have taken place *before* the date of the offense for which he was on trial. But this Court has made it clear that such discussions of an accused's bad reputation need not take place before the date of the alleged offense, as long as they included matters other than the crime for which the accused was on trial. Twine v. State, supra; Frison v. State, supra; Broadway v. State, 418 S.W.2d 679 (Tex.Cr.App.1967).

▮ In Weatherall v. State, 159 Tex. Cr.R. 415, 264 S.W.2d 429 (1954), the State's character witness was held not to be qualified to testify as to the appellant's bad reputation because the witness' "testimony in this regard was not based on anything he had heard from other persons." See also Carver v. State, 510 S.W.2d 349, 355 (Tex. Cr.App.1974) which distinguishes *Weatherall*. Likewise in Broussard v. State, 134 Tex.Cr.R. 1, 114 S.W.2d 248 (1938), the State's witness was held to be unqualified to testify because "he had never heard any person say that appellant's reputation in the respect mentioned was bad." The rules were summarized in Gilson v. State, 140 Tex.Cr.R. 345, 145 S.W.2d 182 (1940) as follows:

> "A witness who testifies that he knows the general reputation of the accused as a peaceable and law-abiding man should be permitted to testify that such general reputation in that respect is good, not-

withstanding such witness states that he has never heard that reputation discussed in the community. See Henderson v. State, Tex.Cr.App., 39 S.W. 116. A different rule prevails where the witness testifies that the reputation is bad. In such event, if the witness states that he has never heard any person say that the reputation of the accused was bad, he is not qualified to speak. Broussard v. State, 134 Tex.Cr.R. 1, 114 S.W.2d 248."

In the case at bar, it appears that Chief Waits, although basing his knowledge of appellant's bad reputation on his "rap sheet" as well as the facts of the offense for which he was on trial, never discussed appellant's reputation with anyone else. In this connection, the case of Martin v. State, 449 S.W.2d 257 (Tex.Cr.App.1970) is very close in point. There, the police officer witness stated on cross-examination that his knowledge of appellant's bad reputation was based on the facts of the case on trial and on appellant's "past record," and that he had not heard appellant's reputation discussed before the date of the offense. The officer was not disqualified, however, when it was established on re-direct that he had discussed appellant's reputation with other officers *after* the date of the offense. Outside of the context of the crime involved in the instant case, it does not appear that Chief Waits ever discussed appellant's bad reputation with anyone before or after the offense. Under the cases that have been cited, therefore, Waits was not qualified to testify that appellant had a bad reputation.

We have concluded, however, that the error in permitting the witness to testify was harmless. Waits' testimony was extremely terse, without embellishment. Moreover, the record shows that he was followed at the punishment phase by three other witnesses from law enforcement agencies in or near Johnson County who gave, without objection, testimony identical to that of Chief Waits'. We conclude that the effect of Waits' testimony was harmless beyond a reasonable doubt.

Appellant next complains of the trial court's failure to grant a change of venue from Johnson County. The trial took place in the 18th District Court of Johnson County, in Cleburne; the offense took place in the town of Joshua and appellant was arrested in Burleson, both in Johnson County. At the hearing on appellant's motion for a change of venue, a private investigator testified for appellant that almost all of the 35–50 people he had interviewed said that appellant could not get a fair trial in Johnson County, but he could only obtain affidavits to that effect from two people. The evidence also showed that Johnson County had 47,000 residents, 20,000 of whom were voters. Two newspaper publishers testified that their papers had county-wide circulations of 8,000 daily and 3,000 weekly, respectively, but appellant was able to show only one or two front page stories concerning the crime at issue in each newspaper. Almost every witness who was called by either party to give evidence at the hearing testified that he thought appellant could get a fair trial in Johnson County.

■■ The applicant for a change of venue has a heavy burden of proving the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful. Absent such a showing, the trial court is well within the limits of his discretion in denying the change of venue. Ward v. State, 427 S.W.2d 876 (Tex.Cr.App.1968). Appellant has not shown that he was required to exhaust his challenges and accept an objectionable juror; nor is there a transcription of the voir dire examination of the prospective jurors so that this Court might inspect it for evidence of prejudice in the community. We are therefore unable to conclude that the trial judge abused his discretion in denying the change of venue. Brantley v. State, 522 S.W.2d 519 (Tex.Cr.App.1975); Jones v. State, 489 S.W.2d 618 (Tex.Cr.App. 1973).

Appellant further complains that the trial court erred in permitting Chief Waits to testify as to the contents of a radio message he broadcast on the grounds it was hearsay based on hearsay. Waits testified at trial that Sylvia Montanez, a material witness, volunteered information to him at the scene of the crime. On the basis of such information, Waits testified, he broadcast on his two-way police radio the fact of the robbery and shooting, a description of the individuals believed responsible—three black males and three black females—and a description of the car they were driving.

■ Appellant objected in the course of this testimony that Waits was being permitted to give hearsay information based on hearsay information. We note, however, that Waits was not relating a message he had *received* on the police radio but, rather, he was testifying to what he *transmitted* on the radio. Sowers v. State, 160 Tex.Cr.R. 456, 272 S.W.2d 119 (1954); Bowman v. State, 504 S.W.2d 880 (Tex.Cr.App.1974); Mejia v. State, 505 S.W.2d 532 (Tex.Cr.App. 1974), and Cozby v. State, 506 S.W.2d 589 (Tex.Cr.App.1974) are thus inapplicable. All four cases involved testimony of information *received* on police radios. We need not reach that issue. The record shows that the witness Sylvia Montanez was permitted to testify at length concerning her observations of appellant, his companions, and the car they were driving immediately prior to the commission of the offense. Thus the essence of the information earlier objected to later came in without objection, and any error is waived or at least rendered harmless. 5 Tex.Jur.2d, Appeal and Error—Criminal, Sec. 446 (1959). In light of the witness Montanez' later testimony, it is impossible to see how appellant was harmed by Chief Waits' recitation of his radio broadcast. Alvarez v. State, 511 S.W.2d 493 (Tex.Cr.App.1974) (opinion on State's Second Motion for Rehearing).

Appellant has presented one final ground of error in a pro se brief submitted during the week of oral argument in this case. We shall briefly discuss his contentions.

Appellant complains that an eyewitness to the shooting was shown and identified appellant's photograph while appellant was in custody and could have been placed in a line-up. He also complains of the trial court's failure to hold a hearing outside the presence of the jury on the identification issue.

In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court indicated its preference for line-up identifications over photographic identifications but declined to place such preference on a constitutional footing. Texas courts have followed *Simmons*, holding that photographic identification of an accused before trial does not automatically taint an in-court identification. Johnson v. State, 494 S.W.2d 870 (Tex.Cr.App.1973). And see United States v. Broadway, 477 F.2d 991 (5th Cir. 1973) where a pre-trial photographic identification that was not shown to be impermissibly suggestive was approved even though the defendant was in custody and readily available for line-up identification.

 The record in the instant case will not support appellant's contentions. There is no mention of the alleged pre-trial photographic identification, or of the procedures employed therein. And the in-court identification of appellant by the eyewitness to the shooting was clearly shown to be based on the witness' independent recollection of the events in question. Thus, no harm was shown from any pre-trial identification procedures. Nor did appellant object at the time of the in-court identification and request that its admissibility be ascertained outside of the presence of the jury. Any defect in the pre-trial identification procedures was thus waived. Evans v. State, 444 S.W.2d 641 (Tex.Cr.App.1969); Gleffe v. State, 509 S.W.2d 323 (Tex.Cr.App.1974).

Appellant's grounds of error are overruled and the judgment is affirmed.

ONION, Presiding Judge (concurring).

I concur in the result of the majority's opinion reluctantly because of the disposition of ground of error # 1.

Chief of Police of the City of Joshua Bill Waits, who was a material witness for the State at the guilt stage of the trial, was recalled by the State at the penalty stage of the trial to testify that the appellant's reputation for being a peaceful and law-abiding citizen was "bad." When the question was propounded to him, the appellant's counsel asked to have the jury removed and developed in their absence that Waits had never heard of the appellant before the date of the offense and had not discussed his reputation with anyone. It appeared from his testimony in the absence of the jury that his reputation testimony was based on the details of the offense charged and on the "rap sheet" or police records supposedly those of the appellant received from the Fort Worth Police Department.

It was clear that Waits was not qualified as a reputation witness and, despite the fact that the appellant objected and called this to the court's attention, the objection was overruled, and Waits was permitted to then testify for the first time in the presence of the jury that appellant's general reputation in the community in which he lived for being a peaceful and law-abiding citizen was "bad."

This was error and should not have been permitted, but I reluctantly agree that the error is harmless in view of the overwhelming evidence of guilt and circumstances surrounding the killing of the 17 year old service station attendant and the shooting of the 21 year old customer during the course of the robbery. The customer lived to testify and identify the appellant as the gunman who shot and killed the attendant and who subsequently shot the witness in the head.

The majority concludes that the error was harmless beyond a reasonable doubt

because Waits' testimony was terse and he was followed by three other law enforcement witnesses who gave testimony, without objection, that appellant's reputation was "bad."

I would caution against interpreting the majority's opinion as meaning that in any case the State is entitled to one free unqualified reputation witness provided there are other reputation witnesses to the same effect whose testimony is unchallenged. Each case must stand on its own bottom. For the State to call a well-known, respected and popular citizen or law enforcement officer as a reputation witness knowing he is not a qualified witness while hoping to render any error harmless by calling other witnesses who are qualified would, in my opinion, be bad faith.

For the reasons stated, I concur.