**Knox William WILSON, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–86–074–CR.**

Court of Appeals of Texas,
Fort Worth.

May 6, 1987.

Rehearing Denied June 10, 1987.

Bankston & Lobingier and David B. Lobingier, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., and David L. Richards, Asst. Criminal Dist. Atty., Fort Worth, for State.

Before FENDER, C.J., and BURDOCK and HILL, JJ.

### OPINION

HILL, Justice.

Knox William Wilson appeals his conviction by a jury for aggravated sexual assault of a child. TEX.PENAL CODE ANN. sec. 22.021 (Vernon Supp.1987). The jury assessed his punishment at life in the Texas Department of Corrections. Wilson brings eight points of error.

We affirm.

In his first point of error, Wilson contends that testimony as to extraneous offenses was wrongfully admitted into evidence, allowing the jury to try him for offenses with which he had not been charged.

■ It is a fundamental principle of law that an accused is entitled to be tried on the accusation made in the State's pleading and not for some collateral crime or for being a criminal generally. *See Smith v. State*, 646 S.W.2d 452, 455 (Tex.Crim.App. 1983). Therefore, the State is generally prohibited from proving prior specific acts of misconduct, similar happenings, or extraneous offenses committed by the accused. *See Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App.1983). The reason for this rule is that although the evidence has some legal relevance to the general issue of whether the accused committed the act charged, it is inadmissible because it is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him. *See Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App. 1972); *see also Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983).

■ This evidence may, however, under certain circumstances, become admissible. The State may introduce evidence of an accused's extraneous misconduct upon a showing both that the evidence is relevant to a material issue in the case and that the probative value of the evidence outweighs its inflammatory or prejudicial potential.

*See Morgan v. State*, 692 S.W.2d 877, 879 (Tex.Crim.App.1985). "The requirement that the material issue be contested as a prerequisite to admission of extraneous acts in proof thereof ... is no more than a rule of thumb for insuring that an extraneous act is genuinely needed to shore up the State's case." *Id.* at 880 n. 3. *See Boutwell v. State*, 719 S.W.2d 164, 175 (Tex. Crim.App.1985) (opinion on reh'g). Therefore, it is really an aspect of the "more probative than prejudicial" analysis, since the greater the State's need to resort to extraneous offenses to prove up some material issue in the case, the higher will be the probative value of that offense in relation to its potential for prejudice. *See Boutwell*, 719 S.W.2d at 175.

■ Evidence of an appellant's extraneous offense may be admissible if its probative value outweighs its prejudicial potential, to prove the following: context in which the act occurred ("res gestae"); circumstantial proof of identity of the perpetrator where the State lacks direct evidence; intent or knowledge; malice or state of mind; motive, scheme or plan; or to refute a defensive theory. *See Albrecht*, 486 S.W.2d at 100–01.

In the present case, the State's evidence showed that although D— L—, Jr., J— L— and N— L— stayed with their father, their mother, S— L—, had visitation rights under which the children stayed with her every other weekend. When visiting their mother, the children would stay at the house of Knox Wilson where their mother was living. D— L—, Jr. and J— L— testified that they were forced on more than one occasion to perform acts of oral intercourse on appellant and that appellant performed acts of anal intercourse on them. D— L—, Jr. also testified that appellant would watch and fondle him as he (the victim) had sexual intercourse with his mother.

Wilson advanced the following defensive theories through his witnesses: that he was sexually impotent due to his heart condition; that he was friendly to neighborhood children out of a sense of charity; and

that the story told by the victim and his brother resulted from being brainwashed by their father, who wanted to avenge his failed marriage on Wilson. S— L—, the mother of the three boys and co-defendant, denied all the charges and testified that Wilson did not use foul language and that she never saw any pornographic magazines in open view in the house. Linda Marshall, Wilson's 27–year-old daughter, also testified that he did not use foul language around children, never left pornographic magazines or other material in open view, and that she did not know of any kind of sexual contact with children in the house.

In rebuttal, the State established that there had been many instances of sexual contact between appellant and other children in his house, and that Wilson's medical condition did not prevent him from having sexual relations. S— S—, a former neighbor, testified that when she was fifteen years old, she began doing housework for Wilson in return for money and cigarettes. She related that when she was fifteen, Wilson had sexual relations with her and that he was the father of her child. She also stated that Wilson had pornographic magazines in his living room and bedroom and that he used a lot of vulgarities. M— S— testified that she used to live near Wilson's house, that in return for "chores" she would do around his house, appellant would give her clothes and toys. She stated that on one occasion Wilson put his hand up her skirt and inserted a finger into her vagina and on another occasion tried to have sexual intercourse with her. She testified she witnessed S— L— and Wilson having sexual intercourse on their bed and that the three boys were sometimes around to witness the act. She remembered seeing nude photographs of S— L— in the house. C— L— testified that about a year before the trial, while she was in Wilson's house, he locked the door, put her on the couch, and took off her pants and underwear, and put his finger in her vagina; he then took her to the bedroom and, after taking his pants off, laid down on top of her. She stated that she had seen pornographic magazines in Knox's house.

In a similar case involving aggravated sexual abuse of a thirteen-year-old boy, the defendant presented evidence that he was not a homosexual or a bisexual, was a loving father who loved children, was incapable of engaging in the conduct alleged against him, and that the entire charge was a "frame up" orchestrated by his wife. The State was allowed to prove that he had engaged in sexual conduct with his son, similar to the conduct he was alleged to have been engaged in with the complaining witness. The court admitted the State's evidence as rebuttal of a defensive theory. *See Vandefifer v. State*, 682 S.W.2d 605, 607 (Tex.App.—Texarkana 1984, no pet.).

■ We therefore hold that the extraneous offenses were admissible to rebut Wilson's defensive theory. We overrule point of error number one.

In point of error number two Wilson contends that the trial court erred in failing to give a limiting instruction on the consideration of evidence of extraneous offenses. At the punishment phase of Wilson's trial, the trial court, in part, instructed the jury as follows:

You are instructed that in fixing the defendant's punishment, which you will show in your verdict, you may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case and the law as submitted to you in this charge.

Wilson's counsel responded, "the Defense has no objections," and did not demand a limiting instruction.

■ In his supplemental brief, Wilson admits that his failure to specifically and timely object to the court's charge waived any error in failing to include therein a limiting instruction on the consideration of evidence of extraneous offenses. *See Williams v. State*, 508 S.W.2d 83, 86 (Tex. Crim.App.1974); *Martin v. State*, 489 S.W.2d 282, 283 (Tex.Crim.App.1973). He also admits that in the absence of an objection, the failure to submit an instruction on extraneous offense is not fundamental error. *See Johnson v. State*, 629 S.W.2d 731, 736 (Tex.Crim.App.1981) (en banc); *Romo*

*v. State*, 568 S.W.2d 298 (Tex.Crim.App. 1977) (opinion on reh'g). We overrule point of error number two.

In his third point of error Wilson contends that the trial court impermissibly commented on the weight of the evidence in violation of TEX.CODE CRIM.PROC. ANN. art. 38.05 (Vernon 1979), by instructing the venire that if the State failed in its burden of proof, they would have to find the defendant not guilty when no such instructed verdict was given at the conclusion of the evidence.

At the beginning of voir dire the trial court, in part, made the following statement to the prospective jurors:

> You are instructed that in all criminal cases, the burden of proof is on the State of Texas. This means that there's no responsibility upon the Defendant to establish his innocence or to introduce any evidence whatsoever.
>
> The burden is on the State of Texas, and if the State fails in its burden of proof, you will be instructed to find the Defendant not guilty. The State has to prove the Defendant guilty; the Defendant is not required to prove that he's not guilty.

■ Wilson failed to preserve the issue for review. The record reflects no objection was made by his counsel in the trial court. Where a judge's comments are not objected to, no error is preserved for review. *See Esquivel v. State*, 506 S.W.2d 613, 616 (Tex.Crim.App.1974); *McCary v. State*, 477 S.W.2d 624, 629 (Tex.Crim.App. 1972). We overrule point of error number three.

In point of error number four Wilson contends that the trial court erred in instructing the jury that it was impossible to have any testimony reread to them in violation of TEX.CODE CRIM.PROC.ANN. sec. 36.28 (Vernon 1981).

While the court stated that it would be impossible to reread the testimony, the court immediately noted that there were circumstances under which certain portions of the testimony can be reread to the jury. Clearly, the court merely admonished the jury to listen carefully to the testimony.

■ Further, it must be noted that Wilson failed to raise an objection to the statement; therefore, nothing is preserved for review. We overrule point of error number four.

In point of error number five, Wilson urges that the trial court erred in admitting into evidence at the punishment phase of the trial the testimony of three police officers as to his general reputation because the State failed to show the qualification of the witnesses to express such an opinion.

■ A reputation witness's testimony that the general reputation of a defendant is bad for having a particular character trait in the community in which he lives must be based on discussions with others concerning the defendant, or on hearing others discuss the defendant's reputation, and not just on personal knowledge. *See Jackson v. State*, 628 S.W.2d 446, 450 (Tex. Crim.App.1982). The discussions must have been more extensive than just with people in the prosecutor's office, but discussions with other peace officers in the defendant's community are sufficient to qualify a witness on reputation. *See id.; MacLeod v. State*, 700 S.W.2d 297, 298 (Tex.App.—Dallas 1985, pet. ref'd).

■ Although specific acts cannot be the sole basis for a witness's knowledge of a person's reputation, it is not improper for a witness to discuss specific acts in determining what the person's reputation is in the community. *See MacLeod*, 700 S.W.2d at 298.

Testimony taken outside the presence of the jury indicated that the three officers had discussed both specific acts and Wilson's general reputation with other police officers. One of the officers had also discussed Wilson with some of his in-laws, with respect to various complaints the in-laws had about him.

■ We find that the trial court did not err in admitting the reputation testimony of which Wilson complains. Wilson primarily relies on *Mitchell v. State*, 524 S.W.2d 510 (Tex.Crim.App.1975). His reliance is misplaced. In *Mitchell*, the officer offer-

ing opinion testimony as to the defendant's reputation based his testimony solely on the facts of the offense and the defendant's "rap sheet." He had not discussed the defendant's reputation with anyone. *See Mitchell*, 524 S.W.2d at 512. In the case at bar, all three officers based their testimony on specific acts and discussions of general reputation with others in defendant's community. We overrule point of error number five.

In his sixth point of error, Wilson urges that the State failed to prove the date on which the offense was committed or that it was committed within the period of limitations, and contends that, therefore, the trial court erred in submitting his guilt or innocence to the jury.

█ To sustain a conviction, the evidence must show that the offense was committed prior to the return of the indictment and at such time that the prosecution would not be barred by limitations. *See Fannin v. State*, 163 Tex.Cr.R. 569, 294 S.W.2d 848, 849 (1956). The record reflects that the indictment was returned March 29, 1985. TEX.CODE CRIM.PROC.ANN. art. 12.01(3)(C) (Vernon Supp.1987) provides a five-year statute of limitations for the offense of sexual assault of a child. In order to sustain the conviction, the evidence must show that the sexual assault was committed prior to March 29, 1985, but after March 29, 1980.

D— L—, Jr. could not provide the jury with the exact date of the offense; however, a review of his testimony clearly indicates that the assault occurred during a time when he visited his mother in Arlington and at a time when he was living with his father in Denton. D— L—, Sr., father of the victim, testified that he moved from Arlington to Denton in June of 1982 and that the last time the boys visited their mother and Wilson was October of 1984.

█ Since it is not incumbent upon the State to prove the exact date alleged in the indictment, we hold that the State sufficiently established that the offense of sexual assault was committed within the five-year statute of limitations, notwithstanding D— L—, Jr. could not testify with certainty as to the exact date on which the offense was committed. *See Mulvehill v. State*, 395 S.W.2d 647, 649 (Tex.Crim.App.1965). We overrule point of error number six.

In his supplemental point of error number one, Wilson contends that his trial counsel rendered ineffective assistance of counsel by not objecting to the trial court's failure to include a limiting instruction at the punishment stage of the trial, which he urges should have been included in the jury charge.

█ A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, a defendant must show that counsel's performance was deficient; second, a defendant must show that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

█ With regard to a defendant's contention that his counsel was not functioning as the "counsel" guaranteed him by the sixth amendment of the United States Constitution, judicial scrutiny of counsel's performance must be highly deferential. *See id.*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. There is a strong presumption that counsel's performance falls within the "wide range of professional assistance," and a defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *See Kimmelman v. Morrison*, 477 U.S. ——, ——, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305, 323 (1986). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *See id.*, 477 U.S. at —— – ——, 106 S.Ct. at 2586–87, 91 L.Ed.2d at 327; *see also Butler v. State*, 716 S.W.2d 48, 54 (Tex.Crim.App. 1986).

The second prong of *Strickland* requires a showing that counsel's alleged errors were so serious as to deprive a defendant of a fair trial, a trial whose result is reli-

able. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. It is not enough for a defendant to show that the errors had some conceivable effect on the outcome of the proceeding, *id.,* 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697; he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See id.*

Basically, the question for our review is whether there is a reasonable probability that absent the alleged errors, the factfinder would have had a reasonable doubt respecting guilt. *See id.,* 466 U.S. at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698. In making this determination we must consider the totality of the evidence before the jury, and the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *See id.*

 Wilson reasons that the extraneous offenses which were admitted erroneously did contribute to the jury's finding at the punishment phase of the trial, and that, therefore, he was denied a fair and impartial judgment. The rule is well settled that an isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel. *See Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App.1984); *Weathersby v. State,* 627 S.W.2d 729, 730 (Tex.Crim.App.1982); *Cude v. State,* 588 S.W.2d 895, 897 (Tex.Crim.App.1979). Further, in *Johnson,* the Court of Criminal Appeals held that the defendant was afforded reasonably effective assistance of counsel, despite the trial attorney's failure to object to the omission of an instruction on extraneous offenses. *See Johnson,* 629 S.W.2d at 736. We, therefore, hold that Wilson has failed to demonstrate that his counsel's actions amounted to ineffective assistance of counsel. We overrule supplemental point of error number one.

In his second supplemental point of error, Wilson contends that the trial court erred by instructing the jury on parole eligibility because TEX.CODE CRIM. PROC.ANN. art. 37.07, sec. 4(a) (Vernon Supp.1987) is an *ex post facto* law as applied to appellant. We have previously held that article 37.07, section 4(a) is not an *ex post facto* law. *Shaw v. State,* 729 S.W.2d 134 (Tex.App.—Fort Worth, 1987). We overrule supplemental point of error number two.

The judgment is affirmed.