

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00398-CR

Mario **ARTEAGA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 63rd Judicial District Court, Val Verde County, Texas
Trial Court No. 12,278CR
The Honorable Enrique Fernandez, Judge Presiding

Opinion by:  Catherine Stone, Chief Justice

Sitting:  Catherine Stone, Chief Justice
Karen Angelini, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  March 5, 2014

AFFIRMED

A jury found Mario Arteaga guilty of indecency with a child by exposure and sentenced him to ten years' imprisonment.  On appeal, Arteaga contends: (1) the evidence is insufficient to support his conviction; (2) the trial court erred by admitting evidence of an extraneous offense; and (3) the trial court erred by providing an improper limiting instruction regarding the prior extraneous offense.  We affirm the trial court's judgment.

## BACKGROUND

On the evening of June 18, 2011, Ruth Reyes and her children visited Reyes's sister, Olivia Chavez, who lived in Arteaga's apartment complex. During the visit, several of Reyes's and Chavez's minor children played outside in the complex's courtyard. Just before dark, Reyes went outside to find the children. Reyes saw the children standing in front of the screen door to Arteaga's apartment and observed the children looking inside the apartment through the screen door. When Reyes approached the apartment and looked through the screen door as well, she saw Arteaga standing behind the door with his pants down, masturbating. Chavez called the police.

Arteaga offered a different version of events. He testified that he was sitting in his living room watching television and playing video games. At some point in the evening, he walked into the kitchen wearing a t-shirt and shorts but no underwear. Arteaga observed children playing outside his screen door. Arteaga testified the children were taunting his pet cat who was sitting inside the apartment, hissing and slapping the screen door towards the children. When Arteaga reached down to pick up the cat, it jumped on his leg with its claws out, causing his shorts to fall down, and causing his naked body to be exposed. Arteaga quickly reached down to pull up his pants and briefly saw Reyes through the screen door. Arteaga denied masturbating in front of the children. Arteaga, who was fifty-three years old at the time of the incident, testified that he had been unable to masturbate since his early thirties, and that he did not have an erection.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

The standard for reviewing sufficiency of the evidence in a criminal appeal is the *Jackson v. Virginia* legal sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). "In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and

determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). "[W]hen viewing the evidence in the light most favorable to the verdict, 'the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony.'" *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013) (quoting *Brooks*, 323 S.W.3d at 899). "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* at 771 (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

*B. Discussion*

Arteaga was charged with indecency with a child by exposure.[1] One of the elements the State was required to prove was that Arteaga acted with "intent to arouse or gratify the sexual desire of any person." TEX. PENAL CODE ANN. § 21.11(a)(2) (West 2011). Arteaga contends the evidence is insufficient to support this element of the offense because none of the children testified at trial and Reyes's testimony was inconsistent with the testimony of other witnesses regarding the number of children who were playing outside, which children were outside, the timing of the alleged event, and who called the police. The State contends the evidence is sufficient to establish the intent element because we must defer to the weight the jury assigned Reyes's testimony. We agree.

---

[1] "A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person . . . with intent to arouse or gratify the sexual desire of any person . . . exposes the person's anus or any part of the person's genitals, knowing the child is present . . . ." TEX. PENAL CODE ANN. § 21.11(a)(2)(A) (West 2011).

"The specific intent required for the offense of indecency with a child may be inferred from the defendant's conduct." *Moore v. State*, 397 S.W.3d 751, 754 (Tex. App.—San Antonio 2013, no pet.). Reyes testified she witnessed Arteaga masturbating by touching his exposed and erect penis, conduct the jury could rationally infer Arteaga did with the intent to arouse or gratify his sexual desire. Although Arteaga claims Reyes's testimony was inconsistent with other testimony, it was within the jury's province to weigh Reyes's credibility. Likewise, it was within the jury's province to weigh Arteaga's credibility and to give more weight to Reyes's version of events. Additionally, the testimony of a single eyewitness may be sufficient to uphold a felony conviction. *Kromah v. State*, 283 S.W.3d 47, 50 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd); *see Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). Arteaga points to no authority requiring the victim of the offense to provide testimony. Accordingly, the direct evidence in the form of Reyes's testimony was sufficient to support Arteaga's conviction.

Moreover, circumstantial evidence also tends to prove Arteaga's guilt. Officer Raymond Mendoza testified that it was still light outside when he responded to Chavez's complaint on the day of the incident. Mendoza first interviewed Reyes, who he described as "very nervous, upset because of what she saw." After speaking with Reyes, Mendoza spoke with Arteaga in his apartment. Without referencing the allegations, Mendoza asked Arteaga if he had been near the back door of his apartment. Arteaga responded that he had been near the door and then stated—without prompting—that his pants were too loose and had a tendency to fall off. When Mendoza asked whether his underwear fell down in front of the children, Arteaga did not respond. Additionally, Chavez testified that one of her children who witnessed the incident appeared to be in a state of shock afterwards.

Viewing the evidence in the light most favorable to the verdict and deferring to the jury's credibility determinations, we hold that the evidence is sufficient to prove Arteaga was guilty of the charged offense.

## EVIDENCE OF EXTRANEOUS ACT

### A. *Standard of Review*

We review a trial court's ruling on the admissibility of extraneous offenses under an abuse of discretion standard. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). "As long as the trial court's ruling was within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005) (quoting *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)). To be admissible, extraneous offense evidence must pass the two-prong test imposed by Texas Rules of Evidence 404(b) and 403: (1) the extraneous offense evidence must be relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character; and (2) the probative value of the evidence must not be substantially outweighed by unfair prejudice. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

### B. *Rule 404(b)*

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). Such extraneous offense evidence may be admissible, however, "when it has relevance apart from character conformity." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). This may include evidence "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX. R. EVID. 404(b). Additionally, evidence may be relevant to rebut a defensive theory. *Williams*, 301 S.W.3d at 687 (citing *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003)). "Whether extraneous offense evidence

has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses*, 105 S.W.3d at 627. "A trial court's 404(b) ruling admitting evidence is generally within [the zone of reasonable disagreement] if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe*, 354 S.W.3d at 469. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401; *Martin*, 173 S.W.3d at 466.

Arteaga contends the trial court erred when it admitted, over his objection, evidence that he previously pled no contest to indecent exposure and was placed on deferred adjudication. Arteaga argues the evidence was offered by the State only to show Arteaga acted in conformity with his prior conduct. Arteaga further argues the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

Arteaga testified at trial. During direct examination by his attorney, Arteaga testified that he had been physically incapable of masturbating for nearly twenty years:

> COUNSEL: When is the last time that you were able to masturbate, sir?
> ARTEAGA: I believe, if memory serves me right, I think it was in my early 30's.
> COUNSEL: And in your opinion, is there any physical way that you could have done this standing up by the screen door?
> ARTEAGA: No, sir.
> COUNSEL: Do you have problems, urinary problems, urinary tract problems?
> ARTEAGA: Yes, sir.
> COUNSEL: Is it difficult for you to use the rest room?
> ARTEAGA: Yes, sir.

On cross-examination, the State moved to admit evidence that Arteaga pled no contest to indecent exposure in 1993 for an incident that occurred in 1992. The State argued that the incident was offered to show intent and absence of mistake or accident. However, the trial court ruled the evidence was admissible only to rebut Arteaga's defensive theory that he was physically incapable

of developing the intent to gratify his sexual desire. The following evidence was established by

the State's cross-examination of Arteaga:

> STATE: On November 9th, 1993 you pleaded no contest to indecent exposure, isn't that correct?
> ARTEAGA: Yes, sir, under legal advice.
> STATE: Okay. And you were placed on deferred—you were placed on probation for two years, isn't that correct?
> ARTEAGA: Yes, sir.
> . . .
> STATE: So my question, Mr. Arteaga, if you read that, is that you were charged that on or about the 22nd day of September, 1992, the defendant, Mario Arteaga, did then and there expose part of his genitals with the intent to arouse and gratify the sexual desire of the said Mario Arteaga, and the said Mario Arteaga did so recklessly and in conscious disregard of whether another person was present who would be offended and alarmed by such an act, to-wit, by exposing part of his genitals in a window while [M.R.] was present?
> ARTEAGA: That's what it says.

"A defendant raises a defensive theory in the context of charged sexual offenses by

presenting evidence of physical incapability or denial of propensity to commit such acts."

*Mendiola v. State*, 995 S.W.2d 175, 179 (Tex. App.—San Antonio 1999), *rev'd on other grounds*,

21 S.W.3d 282 (Tex. Crim. App. 2000); *see Wilson v. State*, 730 S.W.2d 438, 440 (Tex. App.—

Fort Worth 1987, writ ref'd) (claim of sexual impotence raises a defensive theory). "By raising a

defensive theory, the defendant opens the door for the State to offer rebuttal testimony regarding

an extraneous offense if the extraneous offense has common characteristics with the offense for

which the defendant was on trial." *Mendiola*, 995 S.W.2d at 178; *see Roberts v. State*, 29 S.W.3d

596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Here, Arteaga advanced a defensive

theory that he had a physical inability which prevented him from developing an intent to sexually

arouse or gratify himself. In so doing, Arteaga opened the door for the State to rebut his theory by

introducing extraneous offense evidence that was relevant to this claim. The extraneous offense

was unrelated to character conformity, and relevant to Arteaga's claim, because it had a tendency

to make his defensive theory less probable. Although it is not clear whether the extraneous offense

involved masturbation, it did involve Arteaga exposing his genitals through a window with the intent to arouse and gratify his sexual desire. The incident had a tendency to prove that Arteaga was capable of sexual desire, contrary to his testimony. *See Mendiola*, 995 S.W.2d at 181 (extraneous offense involving exposure of genitals relevant to charged offense of indecency with a child where defendant asserted defensive theory of physical inability to develop requisite specific intent). Accordingly, the trial court did not abuse its discretion when it admitted the extraneous offense under Rule 404(b).

### C. Rule 403

Although admissible under Rule 404(b), "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. A Rule 403 analysis involves a balance of: "(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted." *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Under Rule 403, a trial court does not abuse its discretion if the evidence is within the "zone of reasonable disagreement." *Rodriguez v. State*, 203 S.W.3d 837, 843 (Tex. Crim. App. 2006).

The first two factors concern the probative value of the extraneous offense. *Casey v. State*, 215 S.W.3d 870, 882 (Tex. Crim. App. 2007). The first factor, the "inherent probative force" of the extraneous offense, measures "how strongly it serves to make more or less probable the

existence of a fact of consequence to the litigation." *Gigliobianco*, 210 S.W.3d at 641. The similarity between the extraneous offense and the charged offense is an "important measure" of probative force. *Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985). Here, the extraneous offense was strikingly similar to the charged offense. The extraneous offense involved Arteaga exposing his genitals through a window with the intent to arouse his sexual desire. Likewise, the charged offense involved Arteaga's exposing his genitals through a screen door. The similarity between the two incidents provides strong support for the probative value of the extraneous offense evidence.

Arteaga argues the length of time separating the two incidents—almost nineteen years—weighs against probative value. Although the remoteness of an extraneous offense can impact its probative value, Rule 403 imposes no "presumptive time limitation which must be met for an extraneous offense to have probative value." *Newton v. State*, 301 S.W.3d 315, 318 (Tex. App.—Waco 2009, pet. ref'd) (extraneous offenses which occurred twenty-five years before the charged offenses of sexual assault and indecency with a child admissible under Rule 403); *see also Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (evidence of several extraneous offenses, which occurred twenty-four and twenty-eight years prior to charged offenses of sexual assault and indecency with a child, admissible under Rule 403). Here, the remote aspect of the extraneous offense had little impact on its inherent probative force because it was highly relevant to rebut Arteaga's claim that he had not been able to masturbate since his early thirties. Because the extraneous offense occurred when Arteaga was thirty-four years old, it had a tendency to prove, at least within the zone of reasonable disagreement, that he did not have the physical inability he claimed.

The second factor, the State's need for the extraneous offense evidence, is evaluated based on (1) whether other evidence is available to establish the fact of consequence that the extraneous

misconduct is relevant to show, and if so; (2) the strength of the other evidence; and (3) whether the fact of consequence is related to a contested issue. *Mendiola*, 995 S.W.2d at 182. Here, Arteaga contested that he had the requisite specific intent for the charged offense when he raised his defensive theory. *See Hudson v. State*, 112 S.W.3d 794, 803 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (intent a contested issue if the defendant presents evidence to rebut the inference that the requisite intent existed). The fact of consequence—whether Arteaga lacked the physical ability to develop sexual desire—was closely related to the intent issue. *See Mendiola*, 995 S.W.2d at 182.

Arteaga contends the State did not need the extraneous offense to rebut his defensive theory because the State could have bolstered Reyes's testimony by calling the children who witnessed the charged offense to testify. However, the State's need for extraneous offense evidence is enhanced when, as here, a defendant offers controverting evidence in the form of a defensive theory. *Robinson*, 701 S.W.2d at 898–99. Moreover, the strength of the children's testimony cannot be determined because neither side called them to testify. The children were all under the age of seven at the time[2] of the incident and any testimony they could have provided would likely not have been as strong as Reyes's. As it stood, the evidence in the case concerning Arteaga's alleged physical inability was essentially "he said, she said." *See Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (Rule 403 should be used "sparingly," especially in "he said, she said" sexual abuse cases "that must be resolved solely on the basis of the testimony of the complainant and the defendant."). The State needed evidence, aside from Reyes's testimony, to rebut Arteaga's claim that he had a physical inability which prevented him from developing the requisite specific intent. *See Mendiola*, 995 S.W.2d at 182; *see also Jones v. State*, 119 S.W.3d

---

[2] Officer Mendoza testified the children involved were ages two, five, and seven.

412, 423 (Tex. App.—Fort Worth 2003, no pet.) (State needed evidence of extraneous acts to rebut defendant's claim that he had no interest in sex). In making its ruling, the trial court specifically noted that Arteaga opened the door to rebuttal evidence when he testified that he was physically incapable of masturbating, and thus, impliedly, incapable of forming an intent to arouse and gratify his sexual desire. The court further noted that absent evidence of Arteaga's past conduct, the State had no way to rebut Arteaga's claim of physical inability. Accordingly, evaluation of the first two factors establishes that the extraneous offense had a strong probative value to rebut Arteaga's defensive theory.

The remaining factors concern whether that probative value was substantially outweighed by the danger of unfair prejudice. *Casey*, 215 S.W.3d at 883. Evidence, although probative, may be unfairly prejudicial when it has a "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco*, 210 S.W.3d at 641. Although all adverse evidence may be considered prejudicial to a defendant's case, it is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." *Casey*, 215 S.W.3d at 883. In making this determination, we begin with a presumption that relevant evidence is more probative than prejudicial. *Mendiola*, 995 S.W.2d 175, 181–82.

Arteaga argues that despite the trial court's limiting instruction, the inflammatory nature of the extraneous offense influenced the jury in an improper manner. An incident of sexual misconduct involving children is "inherently inflammatory." *Montgomery v. State*, 810 S.W.2d 372, 397 (Tex. Crim. App. 1990). However, the evidence presented to the jury to establish the extraneous offense did not include the details of the offense and the complainant from the extraneous offense did not testify. Additionally, it was not conclusively established that the extraneous offense involved a child. The jury only knew that Arteaga pled no contest to unlawfully

exposing himself through a window. Moreover, any prejudicial effect was lessened by the trial court's limiting instructions before and after admission of the evidence. *See Robinson*, 701 S.W.2d at 899; *see also Newton*, 301 S.W.3d at 320. The trial court twice instructed the jury that the evidence was to be considered only for the limited purpose of rebutting Arteaga's defensive theory. *See Burton v. State*, 230 S.W.3d 846, 851 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (trial court's repeated limiting instructions minimized any risk that the jury could have considered extraneous offenses for an improper purpose.). Therefore, the evidence did not have a tendency to suggest a decision on an improper basis nor did it tend to distract or confuse the jury. Lastly, the presentation of the extraneous offense evidence did not consume an inordinate amount of time because it consisted only of the State asking Arteaga on cross-examination to acknowledge his plea. No other evidence was offered to establish the extraneous offense.

"Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). In this case, no such disparity exists. Accordingly, the trial court did not abuse its discretion when it determined that the probative value of the extraneous offense evidence was not substantially outweighed by unfair prejudice.

**JURY CHARGE ERROR**

*A. Standard of Review*

When the State seeks to introduce evidence of an extraneous offense during the guilt/innocence phase of the trial, the defendant is entitled to a limiting instruction if he timely requests the instruction when the evidence is first introduced. *Delgado v. State*, 235 S.W.3d 244, 253 (Tex. Crim. App. 2007). When analyzing a jury charge error issue, a reviewing court must first determine whether error exists and if it does, analyze that error for harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). A jury charge error requires reversal when the defendant

properly objects to the charge and the court finds "some harm" to his rights. *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). If no objection was made, the court will not reverse for jury charge error unless the defendant has suffered "egregious harm." *Id.* at 743–44.

### B. Discussion

Arteaga contends the limiting instruction included in the jury charge[3] regarding the extraneous offense evidence was improper because it implied that Arteaga's admission of the prior deferred adjudication established that Arteaga acted in conformity therewith on June 18, 2011. The trial court instructed the jury as follows:

> Evidence of Wrongful Acts Possibly Committed by the Defendant
>
> During the trial, you heard evidence that the defendant may have committed wrongful acts not charged in the indictment. The state offered the evidence to show that the defendant acted with intent to arouse or gratify the sexual desire of said defendant. You are not to consider that evidence at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful act.
>
> Even if you do find that the defendant committed a wrongful act, you may consider this evidence only for the limited purpose I have described. You may not consider this evidence to prove that the defendant is a bad person and for this reason was likely to commit the charged offense. In other words, you should consider the evidence only for the specific, limited purpose I have described. To consider this evidence for any other purpose would be improper.

Arteaga contends that the second sentence in the first paragraph, "[t]he state offered the evidence to show that the defendant acted with intent to arouse or gratify the sexual desire of said defendant," is improper because it does not track the language in Rule 404(b). Arteaga contends that the trial court should have instructed the jury, "the state offered the evidence to show that the defendant acted with intent," or "with requisite intent." Arteaga argues that by incorporating the

---

[3] The trial court also gave an oral limiting instruction to the jury before the State elicited the extraneous offense evidence. Arteaga does not challenge this limiting instruction.

intent language from the Texas Penal Code rather than merely including the word "intent," as Rule 404(b) does, the trial court instructed the jury that Arteaga's intent had been established. "In other words, the instruction itself told the jury that the extraneous offense evidence showed that Arteaga acted in conformity therewith on June 18, 2011."

Likewise, Arteaga contends that the second sentence of the second paragraph of the instruction, "[the jury] may not consider the evidence to prove that the defendant is a bad person and for this reason was likely to commit the charged offense," is improper because it does not track the language of Rule 404(b). Arteaga contends that the trial court should have instead instructed the jury: "The jury may not consider this evidence to prove that the defendant acted in conformity with the prior offense on June 18, 2011." We disagree.

First, the alleged error in the first paragraph does not suggest that Arteaga acted with the intent to arouse or gratify his sexual desire when read in the context of the next sentence. In the next sentence, the trial court clearly states that the jury must find, beyond a reasonable doubt, that the act was committed. Second, there is no error in the second paragraph simply because it fails to track the language of Rule 404(b). Arteaga points to *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996), for the proposition that "if a jury instruction fails to follow and comply with the language of the rule or statute from which it is derived, it will be an improper instruction." Although the *Martinez* court held that it was not error if a jury charge tracked the statutory language, it did not require that a jury charge do so. Accordingly, we hold the jury charge was not erroneous.

## CONCLUSION

The evidence is sufficient to support Arteaga's conviction, the trial court did not abuse its discretion by admitting evidence of an extraneous offense, and the limiting instruction in the jury charge was not erroneous.  Accordingly, the judgment of the trial court is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH