Gordon Macon **HILL**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 46760.

Court of Criminal Appeals of Texas.

Jan. 9, 1974.

Rehearing Denied Jan. 30, 1974.

Emmett Colvin, Jr., Lawrence B. Mitchell, Byron Williams, Dallas, for appellant.

Tom O'Connell, Dist. Atty., Elliott Knott and Robert Dunn, Asst. Dist. Attys., McKinney, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## · OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of murder with malice. The jury assessed punishment at five years.

Appellant initially challenges the sufficiency of the evidence. This is a circumstantial evidence case. The deceased and the appellant spent the night at a home of their friend who was not there. The next morning the body of the deceased was found in the house. The appellant was arrested in the evening in his automobile with the murder weapon in his possession.

The record reflects that several classmates from St. Mark's school in Dallas were drinking and attending a party on Saturday evening, February 19, 1972. The last time the deceased, Bobby Fred Sammons, Jr., was seen alive by any of the witnesses other than appellant was when he left his home with the appellant at approximately 12:30 a. m., February 20, 1972, to spend the night at the home of Milburn "Mibbs" Matthews. The body was found in a shower in the Matthews' residence around noon. Sammons had been killed by three shots from a .22 caliber pistol which was found in the appellant's car. Roy Matthews, father of Milburn, testified that

the pistol belonged to him and that it was missing from his home the day in question.

Milburn Matthews testified that when he left his home in Renner the evening of February 19 he bolted the front and back doors and locked the side door. Next, he related that between 7:30 and 8:30 p. m., when he arrived at the home of Bob Bret in Dallas, the appellant was there. The three boys left in appellant's car to attend a party at the home of Harris Block where they remained until 10:00 or 10:30 p. m. and then returned to the Bret house. Milburn related that he did not remember anything from the time they left the Block house until he woke up sometime in the middle of the night at the Bret house. The next morning his key ring containing his car keys and house key was missing. After he and Bob Bret drank orange juice, he went back to bed. Bob went with his younger brother to find appellant to see if he had the keys. Bob later drove Milburn to his home to get a spare set of keys. When Milburn tried to open the side door which he had locked, he found that it had been bolted. He found the front door unlocked and unbolted. Upon entry, he noticed a half bottle of bourbon on the kitchen table which had not been there the evening before. On the floor he found a pair of boots and trousers that belonged to the deceased. He noticed two large dark spots on the carpet and blood on a box at the end of his bed.

Milburn then called Mrs. Sammons in an attempt to locate the deceased. At approximately the same time, Bob had gone into the bathroom adjoining Milburn's room and discovered the body of the deceased in the shower. Both boys then went next door and had the neighbor call the police.

Bob Bret testified that he and appellant had put Milburn Matthews to bed at the Bret home and that he had invited the appellant to spend the night there but that he declined to do so. On cross-examination Bob Bret testified that earlier in the evening the appellant had called his mother

and got permission to spend the night with Milburn. He testified to substantially the same facts as Milburn Matthews did with regard to what occurred after their arrival at the Matthews' residence, adding that he found the wallet of the deceased on the floor of the bedroom.

Roy Matthews testified that he and his wife were at Lake Travis for the weekend when he was notified of the homicide at his home. In addition to identifying the pistol in question as belonging to him, he stated that on a previous occasion the appellant had been to the home and that appellant had seen the pistol in the gun cabinet.

At approximately 8:30 p. m., the appellant was taken into custody by Officers Wacasey and Morris of the Wylie Police Department. Officer Wacasey testified that when he stopped the appellant he asked the appellant if he had a pistol. The appellant replied that it was under the front seat. The pistol was shown to be the same pistol that fired the bullets taken from the body of the deceased. At the time of his arrest, appellant was in possession of the car and house keys of Matthews.

Paula Sammons, a sister of the deceased, testified that she left the Block party with the appellant. Her brother asked and received his mother's permission to spend the night at the Matthews' home. She related that they arrived home about 12:15 or 12:20 a. m. Mrs. Sammons testified that she had given permission to her son to spend the night at the Matthews' home and that he left with the appellant in the appellant's car.

The appellant testified that he spent the night at the Matthews' residence and that he took the keps from Milburn when he helped put him to bed at the Bret house. He also testified that he had the pistol in his car at the time of his arrest but that he did not remember what had happened after he went to bed that night. He further testified that he thought he saw some flashes and heard a noise as if two pieces of wood were being hit together at the Matthews' home.

We hold that the evidence is sufficient for the jury to conclude that the appellant was guilty.

■ Next, appellant contends that the prosecutor suppressed evidence favorable to him. The alleged suppression was the failure of the prosecutor to disclose a conversation that one of the investigators had with Mrs. Roodhouse, a neighbor of the Matthews, wherein she stated that at approximately 1:30 o'clock in the morning she heard screeching tires that sounded like someone having difficulty driving a car on the street in front of her house. He argues that such testimony on the part of Mrs. Roodhouse would have supported his defensive theory that another person could have arrived at the house and committed the offense.

The record does not reflect an attempt to call her as a witness. Apparently, the failure to tell of the statement of Mrs. Roodhouse could have had little effect upon the outcome of the trial. There is no reasonable hypothesis nor fact shown that someone else entered the house and committed the murder. If it could be said that evidence was suppressed, such evidence was not material to the extent so as to require a reversal. Further, it is not shown that the appellant did not know of the statement prior to the trial. Mrs. Roodhouse was available to be called as a witness by appellant if he so desired.

■ Appellant also contends that the prosecutor suppressed evidence by not giving appellant the names of three boys who met with appellant sometime after he left the Matthews' residence.

The record is devoid of any testimony other than hearsay as to what any of the

boys would have said. One of the three, Jerry Thomas, had been arrested on February 20, 1972, and had been in the Collin County jail. Appellant did not attempt to call Thomas or his attorney to testify at the hearing on his motion for new trial. If the appellant met with three boys, he apparently knew it.

The fact that the State might have known of some immaterial matters but failed to disclose them to the defense does not of itself constitute reversible error. Where diligence in obtaining the names of the boys the appellant saw has not been shown and where no attempt has been made on a motion for new trial to show how the appellant has been harmed, no reversible error has been shown.

In Means v. State, Tex.Cr.App., 429 S.W.2d 490, the Court noted that a conviction must be reversed if the prosecutor actively suppresses evidence which may exonerate the accused or be of material importance to the defense. However, this Court further stated that if appellant's counsel actually knew facts which were withheld, then he could not seek relief on the basis of the State's failure to disclose the same facts.

■ The Supreme Court of the United States in Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 700, noted that three factors must be considered in evaluating situations such as this. They are:

1. Suppression by the prosecution after a request by the defense.

2. The favorable character of the evidence for the defense, and

3. The materiality of the evidence.

When we apply those factors to this case, we find that there was not a suppression of material evidence by the prosecutor in failing to report the conversation with Mrs. Roodhouse or in not revealing the names of three boys that he had seen after he left the Matthews' home.

■ Next, appellant contends that the trial court erred in overruling his objection to a portion of the prosecutor's argument. He contends that the statement "If Mibbs Matthews had not been in that house, Bill Bret would have known about it" was outside the record.

The record shows that John Kypke, called by appellant as a witness, testified that he was spending the weekend with Billy Bret and that he and Billy went into the kitchen and drank orange juice. While there, Mrs. Sammons called to find out if her son were there. Kypke testified that Bills searched the house and then informed her that he was not there. He stated that he had not seen Milburn but that his car was in the driveway. The trial court could have concluded that the statement complained of was reasonable deduction from the evidence.

No error is shown.

Appellant next complains of the trial court's statement in the presence and hearing of the jury that the grand jury testimony of a witness who was testifying was being made available to defense counsel for purposes of cross-examination. He argues that if prior statements of a witness are not given to counsel outside the presence and hearing of the jury, he is deprived of effective assistance of counsel.

Counsel contends that requiring counsel to examine the statement while the jury impatiently looks on makes it difficult for counsel to judge the utility of the material for cross-examination purposes. The record reflects that counsel was given time to examine the grand jury testimony outside the presence and hearing of the jury. At counsel's request a brief recess was taken so that he could examine the testimony. Appellant's contention is overruled.

**488**

■ Next, appellant contends that Article 2338–1, Vernon's Ann.Civ.St., as it read at the time of his trial, was unconstitutional because a male could be prosecuted for a criminal offense at the age of seventeen and females could not be prosecuted unless they had reached the age of eighteen.

In Ex parte Matthews, Tex.Cr.App., 488 S.W.2d 434, this Court held the seventeen-eighteen year old classification of Article 2338–1, supra, invalid, but held that the defendant in that case was amenable to prosecution for an offense under the penal code committed when he was seventeen and that every person is amenable to punishment for offenses under the Code (Article 29, Vernon's Ann.P.C.) except persons under the age of fifteen (Article 30, Section 1, Vernon's Ann.P.C.).

■ Finally, appellant complains that the officers had insufficient probable cause to arrest him and that the pistol was seized as the result of an illegal search and seizure. He argues that the police broadcast wanted him as a material witness and that he was not under suspicion at the time. Further, he contends that the seizure of the pistol was unlawful because he was not given a proper warning before consenting to the search of his automobile.

Even if no probable cause existed and it was error to have admitted evidence obtained as a result of the search, no reversible error is shown because the appellant testified that he had the pistol in the car with him; that he examined it, and that he took the clip out and knew it was a .22 caliber pistol. He also testified that he told Officer Wacasey he had the pistol and where in the car it was located. When the appellant testified to the same facts that were proved by the State, error, if any, in admitting such facts was harmless. McComb v. State, Tex.Cr.App., 488 S.W.2d 105.

No reversible error being shown, the judgment is affirmed.