Jose Luis MEJIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 46645.

Court of Criminal Appeals of Texas.

Jan. 30, 1974.

Rehearing Denied March 6, 1974.

Abel Toscano, Jr., Harlingen, for appellant.

F. T. Graham, Dist. Atty. and Menton Murray, Jr., Asst. Dist. Atty., Brownsville, Jim D. Vollers, State's Atty., Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

McCLOUD, Commissioner.

This is an appeal from a conviction for possession of narcotic paraphernalia where punishment was assessed at four years.

A Harlingen Police Officer, Ignacio Salinas, received a radio dispatch on October 31, 1971, directing him to go to a residence located at 718 South J½ Street in Harlingen to investigate a burglary in progress. The officer testified that upon arriving at the house he noticed that it appeared to be vacant. He observed that a padlock had been removed from the front door and the door was slightly ajar. Officer Salinas entered the front room. He heard voices coming from a side room, drew his pistol, and walked to the opening leading into the side room where he observed appellant holding a spoon and his companion holding a lighted match near the spoon. Officer Salinas immediately arrested appellant and his companion for suspicion of burglary. The evidence showed that the house in question was owned by appellant's mother, who had moved from the house in 1966. Appellant did not testify, but his mother, Viola Erickson, and an aunt, Manuella Mejia, testified that appellant lived at 718 South J½ Street, the house in question. The State produced evidence that appellant lived at a different address.

In his first ground of error appellant contends the court erred in admitting certain evidence which was seized by the officers in the house because the search and seizure were illegal. The items seized consisted of a syringe, needle, spoon, dab of cotton, bottle cap, box of matches, and two burned matches. The State contends that Officer Salinas had probable cause to enter the house, arrest the appellant, and the search and seizure were incidental to a lawful arrest. We agree.

After receiving the radio message that a burglary was in progress at the house in question, Officer Salinas drove immediately to the address given him by the police dispatcher. When he arrived, he noticed that the grass was tall and unkept. He thought that the house was vacant. He observed the front door. A padlock had been removed and the door was slightly ajar. He entered the front room and testified that the furniture was dusty and the room had the appearance that no one had lived there for a long time. He heard voices coming from a side room. The officer testified that this furthered his suspicion that a burglary was in fact in progress. He drew his pistol and walked to the opening of the side room where he observed appellant and his companion standing near a chest of drawers and holding the spoon and match. The officer testified that he observed what appeared to be cotton in the spoon. At this point Officer Salinas testified that he placed the appellant and his companion under arrest for suspicion of burglary. He then instructed the two to raise their hands and walk toward him. He handcuffed both parties and escorted them to his car where they were left under the supervision of the Animal Control Inspector who had been riding with Officer Salinas. Officer Salinas testified that when he first saw the items in the possession of appellant and his companion he suspected they were narcotic paraphernalia. After Salinas secured the prisoners, he went back into the house, accompanied by Lieutenant Shannon, who

had arrived on the scene. At this time Officers Salinas and Shannon went to the spot where Salinas had first observed appellant and the other person and on top of the chest of drawers they found a syringe, needle, spoon containing a dab of cotton, and a bottle cap containing moisture. Officer Salinas then took appellant and his companion to the police station, leaving Lieutenant Shannon to preserve the scene. Lieutenant Shannon called police headquarters and requested the assistance of Sergeant Trevino who dealt principally with narcotics. Sergeant Trevino came immediately to the residence and after observing the scene seized the items. Neither Officers Salinas, Shannon nor Trevino had an arrest warrant or search and seizure warrant.

In Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L. Ed.2d 782, the officers received a radio dispatch that a robbery had just occurred and that a cab driver followed the robber to a particular residence. The officers arrived a few minutes later and entered the house without a warrant to search for the suspect. Inside the house the officers found the defendant, along with guns and clothes which matched the description of those that the robber had been wearing. The defendant objected to the evidence contending that it was obtained as a result of an illegal search and seizure. The Supreme Court of the United States said:

"We agree with the Court of Appeals that neither the entry without warrant to search for the robber, nor the search for him without warrant was invalid. Under the circumstances of this case, 'the exigencies of the situation made that course imperative.' McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 [158]. The police were informed that an armed robbery had taken place, and that the suspect had entered 2111 Cocoa Lane less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of

the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape."

See also Kelly v. State, 459 S.W.2d 841 (Tex.Cr.App.1970) and Price v. State, 410 S.W.2d 778 (Tex.Cr.App.1967).

We find the "exigencies of the situation" relieved Officer Salinas from the necessity of securing a search warrant. It reasonably appeared that a burglary was in fact in progress when he entered the house and arrested the appellant. The items seized were in plain view and we are not concerned with an extended search of the house.

Appellant's first ground of error is overruled.

 Appellant next complains that the court erred in admitting the hearsay evidence before the jury of the radio message received by Officer Salinas that a burglary was in progress at 718 South J½.

The trial court concluded that the evidence raised a fact issue as to probable cause and in accordance with Article 38.23, Vernon's Ann.C.C.P., charged the jury that before they could consider the evidence obtained by reason of the entry of the house they must find beyond a reasonable doubt that Officer Salinas had probable cause to believe and did believe that the house in question had been burglarized and that he entered such house for the sole purpose of investigating the burglary and apprehending the burglar. Also, when the court admitted the evidence of what was told to Officer Salinas by the dispatcher the court

instructed the jury that the evidence was not admitted for the truth of what the officer was told, but for the fact that he was told something by the dispatcher.

It has been the consistent holding of this court, where there is no issue of probable cause for the jury, that hearsay statements as to probable cause authorizing an arrest should be heard by the court but not the jury. Cabrera v. State, 395 S.W.2d 34 (Tex.Cr.App.1965); Wood v. State, 166 Tex.Cr.R. 319, 313 S.W.2d 615 (1958). In the instant case, however, there was an issue of probable cause to be determined by the jury. This court distinguished the cases cited above in Lacy v. State, 424 S.W.2d 929 (Tex.Cr.App.1968), where the court said:

"An issue of probable cause for appellant's search without a warrant was made before the jury—which fact distinguishes the case from the above cases cited by appellant. Such testimony was therefore admissible on the issue of probable cause, although such issue was not submitted to the jury in the charge.

"Further, the mere proof that Officer Hadaway had received information that a load of whiskey was going to be hauled—which information did not connect appellant therewith—could not have been injurious to him. In the absence of injury, no reversible error could be shown. Miller v. State, Tex.Cr.App., 396 S.W.2d 128."

We note further that the information received by Officer Salinas did not in any way connect appellant with the offense for which he was being tried. We hold that reversible error was not shown.

 Appellant's fourth ground of error does not comply with Article 40.09, Section 9, V.A.C.C.P., because included within the single ground of error are several different objections to the court's charge. Sierra v. State, 476 S.W.2d 285 (Tex.Cr.App. 1972); Bell v. State, 442 S.W.2d 716 (Tex.Cr.App.1969).

**536**

In ground of error number five appellant complains that the testimony of Peter Núnez, a State Parole Officer, disclosed to the jury that appellant was a convict and under parole from the State Penitentiary. The State contends that Nunez was called as a rebuttal witness to discredit appellant's theory that the house in question did not appear to be vacant and that appellant lived at such house. The State argues further that the testimony of Nunez was admissible to impeach the testimony of Manuella Mejia, who testified that appellant lived at 718 South J½. Nunez testified that on several occasions Manuella Mejia had told him that appellant lived at 819 West Curtis Street.

 In reviewing the testimony of Officer Nunez, we find that shortly after Nunez started testifying appellant's attorney objected to a question and answer on the ground that the testimony was prejudicial and irrelevant. The record reflects that the attorneys had a bench conference with the court. The statement of facts does not reveal the court's ruling. An accused must get a ruling by the court on all objections in order to preserve error. Bell v. State, 442 S.W.2d 716 (Tex.Cr.App.1969). Following the bench conference the State continued to question Nunez and elicited information that appellant was under the supervision of Nunez and that appellant filled out monthly reports which showed that he resided at 819 West Curtis and not at the house where he was arrested.

After both sides closed appellant moved for a mistrial, which was overruled by the court, and in his motion stated that at the bench conference the court stated that if the information was limited to merely the matter of a residence and what the records show the residence to be, then the evidence would be allowed. Appellant stated further in his motion that the State, however, went further and produced evidence that he was a prisoner, that he had been before the Parole Board, and that he was presently under parole.

We do not reach the question of whether the testimony was admissible to rebut or defeat appellant's defensive theories because the record fails to reflect any objection by appellant following the bench conference. The ground of error is overruled.

Appellant's last complaint is that the evidence was insufficient to support the conviction. We disagree. Officer Salinas saw appellant holding a spoon containing a dab of cotton. Appellant's companion was holding a lighted match near the spoon. The parties were standing near a chest of drawers where the officers found a hypodermic syringe and needle, together with other narcotic paraphernalia. Jim Burris, a chemist for the Texas Department of Public Safety, testified that he analyzed the items seized by the officers and determined that the cotton contained 1.12 milligrams of heroin and the spoon had a heroin residue of 0.96 milligrams. The ground of error is overruled. Martinez v. State, 473 S.W.2d 520 (Tex.Cr.App.1971).

The judgment of the trial court is affirmed.

Opinion approved by the Court.