David Wayne LETT, Appellant,

v.

The STATE of Texas, State.

No. 2–85–280–CR.

Court of Appeals of Texas,
Fort Worth.

April 1, 1987.

Discretionary Review Granted
June 24, 1987.

Antonio 1981); *Neff v. Johnson,* 391 S.W.2d 760, 763–64 (Tex.Civ.App.—Houston 1965).

J.R. Molina, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty. and C. Chris Marshall, Asst. Criminal Dist. Atty., for State.

Before FENDER, C.J., and BURDOCK and LATTIMORE, JJ.

## OPINION

BURDOCK, Justice.

David Wayne Lett was convicted of the offense of aggravated kidnapping. *See* TEX.PENAL CODE ANN. sec. 20.04 (Vernon 1974). The jury assessed punishment at 25 years confinement.

We affirm.

Appellant alleges reversible error was committed because: (1) the doctrine of collateral estoppel barred his prosecution by the State; (2) the prosecutor commented on appellant's right not to testify; and (3) the court's charge on parole law violated the state and federal Constitutions.

Although the sufficiency of the evidence is not challenged, we shall recite the facts pertinent to appellant's points of error.

By posing as an Internal Revenue Service agent, appellant gained access to Belinda Minyard's home. Once inside, he forcibly abducted her at gunpoint. Appellant handcuffed Mrs. Minyard's hands behind her back, loaded her body into the trunk of a rental car, and drove her to a remote area near Santo, Texas. There he tied her to a tree. After a number of hours, Mrs. Minyard was able to free herself from the tree and walk to safety.

Appellant called Mrs. Minyard's husband, demanding a $1.2 million ransom. Later, appellant phoned Minyard with instructions on how to deliver the money. After numerous attempts to deliver the ransom, a time and place were selected. Mr. Minyard had informed the FBI, and agents awaited appellant at the scene of the ransom drop. When appellant attempted to claim the money, the FBI opened fire, wounding appellant. While fleeing the ambush by car, appellant nearly ran over special agent Bob Oakley. The following day, appellant surrendered to the Tarrant County Sheriff.

In his first point of error, appellant alleges the State was barred from prosecuting him by virtue of the doctrine of collateral estoppel. Prior to his trial in state court, appellant stood trial in federal court on charges of extortion and assault on a federal officer. 18 U.S.C. secs. 1951 (1984), 111 (1969). Appellant was convicted of extortion, but acquitted on the charge of assaulting Agent Oakley. Appellant contends the use against him in federal court of physical evidence and testimony, particularly Oakley's testimony, collaterally estopped the State from prosecuting him in a Texas court.

In *Dedrick v. State,* 623 S.W.2d 332, 336 (Tex.Crim.App.1981), the Court adopted the statement of applicable principles of collateral estoppel set forth in *United States v. Mock,* 604 F.2d 341, 343–44 (5th Cir.1979):

In principle, the law of collateral estoppel is clear; in application, it can be a slippery concept indeed. According to *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), collateral estoppel 'means simply that when an is-

sue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' *Id.* at 443, 90 S.Ct. at 1194. Thus, *Ashe* mandates two inquiries: First, what facts were necessarily determined in the first law suit? *See United States v. Ballard,* 586 F.2d 1060 (5th Cir.1978); *Adams v. United States,* 287 F.2d 701 (5th Cir.1961). Second, has the government in a subsequent trial tried to relitigate facts necessarily established against it in the first trial? Facts so established in the first trial may not be used in the second trial either as ultimate or as evidentiary facts. *Blackburn v. Cross,* 510 F.2d 1014 (5th Cir.1975); *Wingate v. Wainwright,* 464 F.2d 209 (5th Cir.1972). Thus, while the parent doctrine of double jeopardy bars a subsequent prosecution based on a different section of the criminal code when 'the evidence required to support a conviction upon one of them [the indictments] would have been sufficient to warrant a conviction upon the other,' its progeny, collateral estoppel, bars only the reintroduction or relitigation of *facts* already established against the government. To state the distinction in more prosaic terms, the traditional bar of double jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime. *See United States v. Kramer,* 289 F.2d 909 (2nd Cir.1961) (Friendly, J.). *Id.*

For the following reasons, we cannot agree with appellant's position that his acquittal on the assault charge in federal court absolved him of any guilt stemming from Minyard's abduction. First, we note the rule of collateral estoppel bars relitigation of the same fact issues between the same parties. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970); *Dedrick,* 623 S.W.2d at 336; *Polvado v. State,* 689 S.W.2d 945, 948 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd.). Although appellant was the defendant in both cases, the parties were not the same. The federal government prosecuted the assault case, while the State of Texas brought the aggravated kidnapping charge. Appellant was charged with violating the statutes of two separate sovereigns. *See Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

▪ Second, collateral estoppel only arises when a prior judgment has resulted in an actual acquittal of the defendant. *Lozano v. State,* 676 S.W.2d 433, 436 (Tex. App.—Waco 1984, no pet.). Appellant cannot clearly establish that the rule of collateral estoppel would apply here, since the record reveals that on the basis of the evidence heard in federal court appellant was convicted of the offense of extortion. *See* 18 U.S.C. sec. 1951 (1984). Clearly, appellant's conviction for extortion in federal court did not preclude his prosecution for aggravated kidnapping in state court. *Bartkus,* 359 U.S. at 136, 79 S.Ct. at 685, 3 L.Ed.2d at 694.

Third, the prosecutions involved different issues as well as different parties. The Supreme Court in *Ashe* stated that when an acquittal is based upon a general verdict, a court is required to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge and other relevant matter, and conclude whether a rational jury could have granted its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194. The record before us contains the transcription of the court reporter's notes, the pleadings, charge, and other relevant matter from federal criminal cause no. 4–84–136, in which appellant was acquitted of assault and convicted of extortion. In many respects, the record in the federal case is similar to the one in the kidnapping case.

The elements of the offense of assaulting certain officers or federal employees, codified at 18 U.S.C. sec. 111 (1969), are:

1. the act or acts of forcibly assault-

ing, resisting, opposing a federal officer [1] while such officer was engaged in the performance of his duties; and

2. the doing of such acts willfully. *United States v. Bell*, 767 F.2d 405, 407 (8th Cir.1985).

Count two of the State's indictment in the aggravated kidnapping case set forth the following elements as prerequisites to a conviction for that offense:

(1) the appellant

(2) intentionally or knowingly

(3) abducts

(4) another person

(5) by secreting and holding her in a place where she would unlikely be found

(6) with the intent to prevent her liberation

(7) with the intent to hold her for ransom or reward.

*See also* TEX.PENAL CODE ANN. secs. 20.03, 20.04 (Vernon 1974). Clearly, each offense required proof of facts not required in the other. *Ex parte Wornell*, 633 S.W.2d 904, 905 (Tex.Crim.App.1982). We cannot conclude from the jury's general verdict of acquittal in the federal trial for assault that an issue of fact necessary for conviction on the aggravated kidnapping charge was resolved against the State. Appellant's first point of error is overruled.

In appellant's second point of error, he alleges the prosecutor commented during jury argument on his failure to testify. During closing argument at the punishment stage of the trial, the assistant district attorney stated:

That man right there. That man right there who walked in another child's home, two other children's home, and took their mother, and he wants to come up here *mewin' and pewkin'* about what you're going to do?

[DEFENSE COUNSEL]: Your Honor, we're going to object to the prosecutor has made a direct statement about the defendant's right not to testify, so allud-

ed to it directly to the jury. I would so object.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Note my exception to the Court's ruling. [Emphasis supplied.]

 The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial, so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App.1980). To be permissible, jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Cannon v. State*, 668 S.W.2d 401, 404 (Tex.Crim.App.1984); *Darden v. State*, 629 S.W.2d 46, 52 (Tex.Crim.App.1982).

 When an argument exceeds the permissible bounds of the above areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial proceedings new facts harmful to the accused. *Bell v. State*, 724 S.W.2d 780 (Tex.Crim.App.1986); *Mathews v. State*, 635 S.W.2d 532, 539 (Tex.Crim.App.1982).

The test for determining whether improper jury argument is harmless error is not whether a conviction could have been had without the improper argument, but whether there is a reasonable possibility that the argument complained of might have contributed to the conviction or the punishment assessed. *Garrett v. State*, 632 S.W.2d 350, 353–54 (Tex.Crim.App. 1982); TEX.R.APP.P. 81(b)(2). In other words, whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. ——, ——, 106 S.Ct. 2464, 2472, 91

---

**1.** FBI agents are considered protected federal employees pursuant to 18 U.S.C. 1114 (Supp.

1986).

L.Ed.2d 144, 157 (1986). In making this determination, we must review the evidence at the guilt-innocence stage as well as that adduced at the punishment phase of the trial. *See Garrett,* 632 S.W.2d at 353–54.

In assessing the damage done to appellant by the jury argument, we note that because the objectionable remark occurred during the punishment phase of the trial it did not contribute to his conviction. The maximum punishment for the offense of aggravated kidnapping is a life sentence. *See* TEX.PENAL CODE ANN. secs. 12.-32(a) (Vernon Supp.1987), 20.04(b) (Vernon 1974). In light of this, the jury's imposition of a 25 year sentence on appellant cannot be considered excessive, even though the panel ignored his request for probation.

 In view of the above observations, we do not find a review of the evidence indicates the remark affected the jury's assessment of punishment. Nevertheless, appellant argues the comment constitutes reversible error. Article I, section 10 of the Texas Constitution and article 38.08 of the Texas Code of Criminal Procedure provide for the privilege against self-incrimination. The relevant code provision states, in part: "the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause." TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979). *See McDaniel v. State,* 524 S.W.2d 68, 70 (Tex.Crim.App. 1975).

To exceed the bounds of article 38.08, the language used in reference to the failure to testify must be a necessary one. *Bird v. State,* 527 S.W.2d 891, 894 (Tex.Crim.App. 1975). It is not sufficient that the language might be construed as an implied or indirect allusion thereto. *Ramos v. State,* 419 S.W.2d 359, 367 (Tex.Crim.App.1967). The test is whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily interpret it as a comment on the accused's failure to testify. *McDaniel,* 524 S.W.2d at 70.

Here, the terms "mewin" and "pukin" do not lend themselves to every day interpretation. *Webster's Third New International Dictionary* 1425 (1981) defines "mew" as, among other things even more remote, "the natural noise of a gull". "Puke" is defined as "causing one to vomit". *Webster's Third New International Dictionary, supra,* 1839. Appellant's brief suggests the terms may have been derived from Shakespeare.[2]

In our view, these obscure terms were not of such a character that the panel would naturally and necessarily interpret them as a comment on appellant's failure to take the stand. Accordingly, we overrule appellant's second point of error.

In his third and fourth points of error, appellant contends the court's instruction to the jury on parole law violates the Texas and United States Constitutions. Specifically, his third point alleges the parole instruction violates the separation of powers clause of the Texas Constitution. *See Rose v. State,* No. 05–85–01136–CR (Tex.App.—Dallas, Aug. 11, 1986) (opinion withdrawn Sept. 12, 1986); TEX. CONST. art. II, sec. 1; TEX.CODE CRIM.PROC.ANN. art. 37.-07, sec. 4 (Vernon Supp.1987). This court has already rejected such a contention in *Patton v. State,* 717 S.W.2d 772, 779–80 (Tex.App.—Fort Worth 1986, pet. pending). Furthermore, the Dallas Court of Appeals has since withdrawn its original *Rose* opinion, and substituted for it an opinion which also holds the statutory parole instruction is constitutional under the separation of powers doctrine. *See Rose v. State,* 724 S.W.2d 832 (Tex.App.—Dallas, 1986) (en banc) (pet. granted). Appellant's third point of error is overruled.

Appellant's fourth point of error alleges the parole instruction also violates the due

---

2. Shakespeare, *As You Like It,* Act II, Scene VII:
 All the world's a stage,
 And all the men and women merely players.
 They have their exits and their entrances,
 And one man in his time plays many parts,
 His acts being seven ages. At first the infant,
 *Mewling* and *puking* in the nurse's arms.
 Then the whining schoolboy, with his satchel.

process of law guarantees provided by the Texas and United States Constitutions. Appellant claims his third point of error contains argument and authority in support of this point as well. However, a careful reading of appellant's brief fails to reveal any legal argument in support of this point. Appellate briefs which advance no citations or argument present nothing for review.

*Brooks v. State,* 642 S.W.2d 791, 797 (Tex. Crim.App.1982). Therefore, we must overrule appellant's fourth point of error.

The judgment is affirmed.