**Douglas Neal ADAMS**

v.

**The STATE of Texas**

**No. 2–86–155–CR.**

Court of Appeals of Texas,
Fort Worth.

Dec. 16, 1987.

Rehearing Denied Jan. 27, 1988.

Pamela J. Moore, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., C. Chris Marshall, Tim White, and Betty Stanton, Asst. Dist. Attys., Fort Worth, for appellee.

Before BURDOCK and LATTIMORE, JJ.

## OPINION

BURDOCK, Justice.

Douglas Neal Adams appeals from his conviction for possession of a controlled substance with two prior felony convictions proven for enhancement. *See* TEX.REV.CIV.STAT.ANN. art. 4476-15, sec. 4.04(a) & (b) (Vernon Supp.1987). A jury found the appellant guilty and assessed his punishment at 60 years in the Texas Department of Corrections. The appellant challenges his conviction in five points of error on the grounds of prosecutorial misconduct, improper jury argument, newly discovered evidence and error in the jury charge. We affirm the appellant's conviction.

On December 19, 1985, a Fort Worth police officer pulled his car behind a car driven by the appellant. Upon running a routine license plate check, the officer was informed by the dispatcher that the vehicle was listed as stolen. The officer pulled the car over and placed appellant under arrest. Pursuant to the arrest, a search of the appellant was conducted which produced a cellophane bag containing two capsules. The arresting officer turned the capsules in to the police property room. The two capsules were later taken to the Fort Worth Crime Lab for testing. The person who performed the tests was criminologist Harold Loveless. Tests on these capsules revealed that one of them contained heroin.

At the appellant's trial, which began July 1, 1985, the Director of the Crime Lab, Mr. Frank Shiller, testified regarding the test results on the capsules. During the State's direct examination, the following testimony was elicited:

STATE'S ATTORNEY: Directing your attention back to December of 1985, ... did you have an employee with the Fort Worth Crime Lab by the name of Harold L. Loveless?

MR. SHILLER: Yes.

STATE'S ATTORNEY: And what was his position with the Fort Worth Crime Lab?

MR. SHILLER: Mr. Loveless was employed by the Crime Lab as a Laboratory Criminologist.

STATE'S ATTORNEY: And where is Mr. Loveless now?

MR. SHILLER: Mr. Loveless resigned recently and has taken other employment.

STATE'S ATTORNEY: And the job change, there was no termination by the Crime Lab of Mr. Loveless or his position, was there?

MR. SHILLER: No.

. . . .

STATE'S ATTORNEY: And the departure that he made recently, was that for a more favorable position?

MR. SHILLER: I'm not aware of the position that he took, the exact job.

STATE'S ATTORNEY: Well, what I'm getting at, is there anything in his departure from the Crime Lab that reflected on his performance of his duties at the Crime Lab?

. . . .

DEFENSE ATTORNEY: Your Honor, we are going to object to this testimony for the reason that it's basically in the matter of the character of Mr. Loveless and outside the scope of his expertise, if any, and we will object to the testimony in regard to the character of Mr. Loveless.

THE COURT: What's your purpose counsel?

STATE'S ATTORNEY: Well, your Honor, we just wanted to establish that there

was no—the purpose of Mr. Loveless' departure.

DEFENSE ATTORNEY: Your Honor, we will object to what she is attempting to do in front of the jury.

. . . .

THE COURT: All right. Just prove up his qualifications, Counsel. It's sustained.

. . . .

STATE'S ATTORNEY: And based on your review of the file in this instance and Mr. Loveless' reports and charts that were generated in testing, is there any reason to question the accuracy of Mr. Loveless' tests?

DEFENSE ATTORNEY: Your Honor, we would object to the question as bolstering.

THE COURT: Overruled.

STATE'S ATTORNEY: There is no basis for questioning the results.

MR. SHILLER: No, that's correct.

Before and during the appellant's trial, an investigation was under way by the Fort Worth Police Department concerning the theft of drugs from dormant cases in the Fort Worth Crime Lab. By June 19, 1986, the investigation had focused on criminologist Harold Loveless. As a result of the investigation, Loveless had stopped coming to work on June 19, 1986, and by June 30th had resigned his position. Loveless was never formally charged following the investigation. Although Shiller knew of the facts surrounding Loveless, he did not mention them in his testimony on July 1st during the appellant's trial. Shiller informed the State's attorney of the Loveless investigation the day after he testified, and the State's attorney did not inform the appellant's counsel of the Loveless investigation until July 8, 1986, after the trial's completion.

Upon learning this information, the appellant's counsel filed a motion for new trial on the grounds that new evidence had been discovered and upon the failure of the prosecutor to produce exculpatory material upon request. After a hearing on this motion on August 29, 1986, it was overruled by the trial court on September 5, 1986.

In his first point of error, the appellant contends the trial court erred in denying the appellant's motion for new trial which was based upon newly discovered evidence. The appellant urges that the information regarding the alleged conduct of Loveless would have been material in that it would have enabled the appellant to mount a significant attack upon the chain of custody of the evidence, the integrity of the lab technician, and consequently the admissibility of his report.

■ To be entitled to a new trial based on newly discovered evidence, the record must reflect that: 1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial; 2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence; 3) the new evidence is probably true and will probably bring about a different result on another trial; and 4) the new evidence is admissible and is not merely cumulative, corroborative, collateral or impeaching. *See* TEX.CODE CRIM PROC.ANN. art. 40.03, subd. 6 (Vernon 1979); *Koffel v. State*, 710 S.W.2d 796, 806 (Tex.App.—Fort Worth 1986, pet. ref'd); *Hayes v. State*, 709 S.W.2d 780, 783 (Tex.App.—Houston [1st Dist.] 1986, no pet.).

The record reveals that at the motion for new trial hearing, the prosecutor first told the appellant's attorney of the investigation concerning Loveless on July 8, 1986, after the close of evidence. However, the record also reveals that the investigation was made public on June 10, 1986 in an article in the Fort Worth Star Telegram, and also that the defense attorney was made aware of Loveless' resignation during the direct examination of Frank Shiller. Despite this, the defense attorney objected to any questions posed by the State regarding the reasons for Loveless' departure from the Crime Lab. The appellant's counsel possibly could have discovered the evidence had he not objected and instead pursued the matter upon cross-examination of Shiller. Therefore, while the record shows that the appellant probably did not have actual knowledge of the investigation at the time of the trial, and while it

could be said that appellant's counsel's actions at trial were self-defeating, they probably do not show a lack of diligence.

The record reveals that the investigation which constituted the newly discovered evidence actually occurred. Therefore, the requirement that the movant show the evidence is true is satisfied here. *See Carpenter v. State*, 87 S.W.2d 731, 734 (Tex. Crim.App.1935). However, the movant is also required to show the evidence will probably bring about a different result on another trial. *Hayes v. State*, 709 S.W.2d at 783. To meet that requirement, the appellant attempted to enter the testimony of a juror from the appellant's trial at the hearing on the motion for new trial. Although the trial court refused to allow the juror to testify, the appellant did make out a Bill of Exceptions to preserve the juror's testimony.

■ The juror testified that he was left with a false impression of the reason for Loveless' resignation, and that had he known of the investigation surrounding Loveless, his vote on the verdict may have been different. Although this evidence may have had the effect of showing that there could have been a different result in the verdict, we hold that the trial court properly refused to consider the juror's testimony. It is a well established rule that a juror may not impeach a verdict by testifying as to the mental process by which the jury reached its verdict. *See Daniels v. State*, 600 S.W.2d 813, 816 (Tex.Crim.App. 1980); *Berry v. State*, 588 S.W.2d 932, 935 (Tex.Crim.App.1979); *Hill v. State*, 493 S.W.2d 847, 849 (Tex.Crim.App.1973). Since such evidence is improper, we will not consider it for the purpose of meeting the requirements of article 40.03. Considering the evidence properly before the trial court, we cannot say the trial court erred in holding that the appellant failed to prove the third element of article 40.03, since he was unable to show that the newly discovered evidence would probably have resulted in a different result on another trial.

■ The fourth element of article 40.03 requires the movant to show that the newly discovered evidence is admissible, and not merely collateral, corroborative or impeaching. *See* TEX. CODE CRIM.PROC.ANN. art. 40.03(6) (ch. 426, sec. 5, 1973) TEX. GEN. LAWS 1122, 1127–28, *repealed by* Act of June 14, 1985, ch. 685, sec. 4, 1985 TEX.GEN. LAWS 2472–73. The appellant asserts that the evidence of the investigation would have been valuable in attacking the chain of custody of the evidence and the credibility of Loveless and the test results. Upon examination of the record, it appears that such evidence concerning the investigation surrounding Loveless would have been inadmissible. Clearly, the evidence surrounding the investigation would be inadmissible to impeach Loveless, since a person cannot be impeached by alleged prior acts of misconduct for which there has been no conviction. *Randolph v. State*, 499 S.W.2d 311, 313 (Tex.Crim.App. 1973). It should also be noted that Loveless himself was not required to testify in order to admit the results of the lab test into evidence since the lab reports were properly introduced into evidence as a business record. *See Jones v. State*, 611 S.W. 2d 64, 65–66 (Tex.Crim.App.1980); *Ardoin v. State*, 682 S.W.2d 595, 596 (Tex.App.— Beaumont 1984, no pet.).

■ The evidence of the investigation would not be admissible to attack the chain of custody of the heroin. The chain of custody of evidence is at issue where there has been some allegation of tampering made by the party opposing its admission. *See Jones v. State*, 617 S.W.2d 704, 705 (Tex.Crim.App.—1981). If the chain of custody is attacked, the attack goes only to the weight of the evidence, not to its admissibility. *See Medellin v. State*, 617 S.W.2d 229, 232 (Tex.Crim.App.1981).

The record reveals that the officer who seized the heroin from the appellant testified that the evidence appeared identical to that which he placed in the police evidence locker, with the exception that there were a few extra pieces of tape on the bag containing the heroin and some extra writing on this bag. The officer also testified that there were some small pieces of paper in the bag which he did not recognize. These deviations were explained by

Frank Shiller as marks routinely made by the lab technician during testing. Shiller explained that the paper was "weighing paper," which is commonly used in testing small amounts of drugs. In light of this testimony, the record reflects no evidence of tampering. Further, any evidence concerning accusations made against Loveless concerning tampering with drugs in other dormant cases would be collateral and therefore inadmissible at trial. *See generally Hill v. State,* 608 S.W.2d 932 (Tex.Crim. App.1980); *Murphy v. State,* 587 S.W.2d 718 (Tex.Crim.App.1979).

The decision to grant or deny a new trial is relegated to the discretion of the trial judge, and will not be altered absent a clear showing of abuse. *See Williams v. State,* 504 S.W.2d 477, 482 (Tex.Crim.App.1974); *Markham v. State,* 644 S.W.2d 53, 56 (Tex. App.—San Antonio 1982, no pet.). On the basis of the record before us, we find no abuse present. Appellant has failed to show that the newly discovered evidence was admissible or that its admission would probably have resulted in a different result in another trial. If the motion for a new trial fails to establish any of the essential requirements, a new trial should be refused. *Ashworth v. State,* 205 S.W.2d 788, 790 (Tex.Crim.App.1947). Accordingly, appellant's first point of error is overruled.

■ In his second point of error, the appellant urges that the trial court erred in denying the appellant's motion for new trial based upon prosecutorial misconduct. The appellant's contention is that the evidence of the investigation constituted important exculpatory material which should have been divulged by the prosecutor pursuant to a motion filed with the court by the appellant prior to trial. The appellant's discovery motion specifically requests that the State produce any exculpatory evidence pursuant to the decision in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* the United States Supreme Court held that the prosecution must give the defendant any evidence it possesses that is favorable to the defendant and material to guilt or punishment. *Id.* at 83 S.Ct. 1196. In *United States v.*

*Bagley,* 47 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), this rule was extended by the Supreme Court to cover any evidence which might be useful for impeachment by the defendant. *Id.* at 105 S.Ct. 3380. To establish a valid *Brady* claim for appellate review, the appellant must show: 1) the suppression of evidence after a request by the defense; 2) the evidence was favorable to the defense; and 3) the evidence was material. *Macias v. State,* 704 S.W.2d 484, 488 (Tex.App.—Houston [14th Dist.] 1986, no pet.).

■ The record clearly reflects that the appellant, by his pre-trial motion, requested any exculpatory evidence held by the State. The record also reflects that the prosecutor generally knew of the investigation before the close of the evidence in the trial. However, the requirements that the evidence be material and favorable are not met here. Harold Loveless was suspected of taking drugs from dormant cases for financial gain. The record does not reflect that Loveless was ever suspected of tampering with drugs in active cases, or in this particular case. In fact, Shiller testified that as far as the cases on which Loveless had performed tests, his record for accuracy was never found deficient.

The most compelling reason that the evidence would not have been helpful to the appellant is the fact that such evidence would have been inadmissible. As discussed above, the evidence would not have been admissible for impeachment purposes. *See Randolph v. State,* 499 S.W. 2d at 313. The appellant claims that the evidence of the investigation would not only be useful for impeachment of Loveless' character, but also useful in attacking the chain of custody and the reliability of the testing procedure. We are not persuaded by this assertion. The chain of custody was established by the arresting officer and Frank Shiller. The reliability of the testing procedure was established by Shiller as well. Any evidence of accusations toward the person conducting the test concerning tampering with evidence in unrelated cases would have been a collateral matter of impeachment character, and not

actually directed toward the chain of custody or the testing procedure itself. Therefore, such evidence would have been inadmissible. *See generally Garcia v. State,* 454 S.W.2d 400 (Tex.Crim.App.1970). No error exists where the prosecution fails to disclose information that is inadmissible. *See Hill v. State,* 504 S.W.2d 484, 487 (Tex. Crim.App.1974); *Carmona v. State,* 670 S.W.2d 695, 698 (Tex.App.—Texarkana 1984) *aff'd,* 698 S.W.2d 100 (Tex.Crim.App. 1985). The appellant's second point of error is overruled.

Appellant's third and fourth points of error concern statements made by the prosecutor during closing arguments in the guilt/innocence phase of the trial. Specifically, the appellant asserts that the following statement by the State's attorney constitutes reversible error:

> "Quality Control. The Defense lawyer is talking about quality control. We agree on that point. I'm talking about quality control, but I'm asking you to start with this *drug user* over here, the man that they caught on the scene that day." [Emphasis added.]

The appellant contends that the statement used by the prosecutor labeling appellant as a "drug user" is a reference to extraneous acts related to drug use not admitted into evidence. The appellant lodged timely and specific objection at each of the two instances where the prosecution made such a statement.

■ Proper jury argument falls within one of four delineated areas: 1) summation of the evidence; 2) reasonable deduction from the evidence; 3) answer to argument of opposing counsel; and 4) a plea for law enforcement. *See Lett v. State,* 727 S.W.2d 367, 369 (Tex.App.—Fort Worth 1987, pet. granted). If an argument exceeds the permissible bounds of these areas, it will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, is violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceedings. *See Bell v. State,* 724 S.W.2d 780, 802–03 (Tex.Crim.App.1986); *Mathews*

*v. State,* 635 S.W.2d 532, 539 (Tex.Crim. App.1982).

■ The record before us reflects that the appellant was arrested with heroin in his possession. Evidence of this fact was admitted at trial and the jury chose to believe it. Considering this, the prosecutor's remarks can be said to be supported by the evidence and was therefore within the bounds of permissible jury argument. *See generally Alvarez v. State,* 508 S.W.2d 100, 102 (Tex.Crim.App.1974); *Archer v. State,* 474 S.W.2d 484, 485 (Tex.Crim.App. 1971). Appellant's third and fourth points of error are overruled.

■ The appellant's fifth point of error is directed to the jury charge. The appellant contends that the trial court erred in including the definition of "intentionally or with intent" in the charge over the appellant's objection. According to appellant, the use or definition of "intentionally or with intent" is inapplicable in the appellant's case because possession describes a relationship to property and does not go to an act or omission of the defendant.

The appellant cites *Alvarado v. State,* 704 S.W.2d 36 (Tex.Crim.App.1985) for the proposition that error exists where a trial court refuses to instruct a jury in a *result* oriented crime that the defendant acted intentionally or with intent. Conversely, appellant argues, it is likewise error to instruct a jury on intent with a conduct oriented offense.

We find appellant's argument unpersuasive. Unlike the defendant in *Alvarado,* the appellant did not contest an allegation of mental culpability at his trial. Therefore, a jury charge alleging mental culpability on the part of the defendant did not cause harm. Further, possession may be a "result oriented" offense, since many cases have held that the defendant's actions resulted in possession. *See generally Cote v. State,* 682 S.W.2d 380 (Tex.App.—Austin 1984, pet. ref'd) (defendant seen passing vial between himself and another held possession); *Mejia v. State,* 505 S.W.2d 532 (Tex. Crim.App.1974) (defendant observed holding spoon with another person holding match under it held possession); *Floyd v.*

*State*, 494 S.W.2d 828 (Tex.Crim.App.1973) (defendant seen throwing baggie through window held possession); *Harris v. State*, 486 S.W.2d 88 (Tex.Crim.App.1972) (drugs found in defendant's car held possession).

Here, the appellant was searched pursuant to a lawful arrest and was found to have the heroin in his back pocket. The appellant has failed to show how he was harmed by the charge permitting conviction for the result of possession as well as for the nature of possessing the controlled substance. The appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.

HILL, J., dissents.

HILL, Justice, dissenting.

I respectfully dissent.

This is a conviction for possession of a controlled substance. The undisputed record reflects that at trial the results of the testing performed on the material found in Adams' possession were presented through the testimony of Frank Shiller, the Director of the Fort Worth Crime Lab.

Shiller testified concerning the results of a lab report made by Harold Loveless, a former employee of the crime lab. In addition to the testimony set forth in the majority opinion, Shiller gave the following additional testimony:

> STATE'S ATTORNEY: And did you ever find anything lacking in Mr. Loveless' procedures or performances?
>
> MR. SHILLER: No, I can't say that nothing was ever not returned for incompleteness. That's over a period of time.
>
> . . . .
>
> DEFENSE ATTORNEY: But, on the other hand, you do also have to rely upon Mr. Loveless to make a correct record as far as your interpretation here today; is that correct?
>
> MR. SHILLER: Yes.
>
> . . . .
>
> STATE'S ATTORNEY: Is there any reason why we should not rely on Mr. Loveless' accuracy in that regard?
>
> MR. SHILLER: No, ma'am.

In summary, Shiller testified that there was no basis for questioning the accuracy of Mr. Loveless's work. In fact, Mr. Loveless had been relieved of his duties pending an investigation of charges that he was tampering with substances submitted to the lab for testing. He had submitted his resignation shortly before trial. Although Mr. Loveless had not been convicted or even charged with any felony or offense involving moral turpitude, the supporting basis for the accusations would provide a basis for questioning the accuracy of Mr. Loveless's work.

The State learned the true facts during the trial, but did not reveal the information to Adam's counsel until after the trial.

The United States Supreme Court has held that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1972). The result is the same when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. *Id.* Suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution. *Id.* When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule. *Id.* at 154, 92 S.Ct. at 766. A new trial is required if the evidence is material and if the false testimony could in any reasonable likelihood have affected the judgment of the jury. *Id.*

I would hold that the evidence is material. The lab report, which was introduced through the testimony of Mr. Shiller, not Mr. Loveless, formed the very basis of the State's case against Mr. Adams. Because of the fact that the report was introduced under the public records exception to the hearsay rule, the defense was unable to question Mr. Loveless concerning the report. Rule 803(8) of the Texas Rules of Criminal Evidence provides that such reports are admissible, "unless the sources of

information or other circumstances indicate lack of trustworthiness." Although Mr. Loveless had previously been relieved of his duties, presumably because of questions as to his trustworthiness, the State was representing to the judge and jury that there was no reason to question the accuracy of his work. The trial judge, therefore, did not have accurate information upon which to base his rulings on Adams' objections to Mr. Shiller's testimony as to the results of Loveless's tests. Additionally, the jury was given false information to use in considering the accuracy of the report. The State did not correct the inaccuracy. There is at least a reasonable likelihood that the uncorrected false testimony could have affected the judgment of the judge or the jury, or both.

The majority deals with this issue as though it were a mere failure to disclose exculpatory testimony to the defendant as condemned in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The error in that analysis lies in the fact that this is not a mere case of nondisclosure, but instead is a case of false misrepresentation as to the credibility and reliability of evidence so material that the prosecution ultimately relies on its validity. The cases and tests relied upon by the majority are not relevant to our inquiry since none seems to involve false material evidence which the State allows to go uncorrected.

I would sustain point of error number two and reverse and remand for a trial in which the judge, jury, and defendant are not given an uncorrected, false view of the material evidence.